# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MELVIN JOSEPH SIMMONS,

Plaintiff,

v.

DERAL G. ADAMS, et al.,

Defendants.

_______________________________________/

CASE NO. 1:10-cv-01259-LJO-SKO PC

FINDINGS AND RECOMMENDATIONS RECOMMENDING PLAINTIFF'S RULE 56(D) MOTION BE DENIED, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE DENIED, AND PLAINTIFF'S CLAIM FOR DECLARATORY RELIEF BE DISMISSED

(Docs. 46 and 52)

THIRTY-DAY OBJECTION DEADLINE

**<u>Findings and Recommendations - Defendant's Motion for Summary Judgment</u>**

## I. <u>Procedural History</u>

Plaintiff Melvin Joseph Simmons, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on July 14, 2010. This action for damages is proceeding on Plaintiff's amended complaint against Defendant T. Sanders for use of excessive physical force, in violation of the Eighth Amendment of the United States Constitution. Plaintiff's claim arises out of an incident which allegedly occurred on November 18, 2009, after he arrived at California State Prison-Corcoran (Corcoran) on a transportation bus. 28 U.S.C. § 1915A.

On September 20, 2012, Defendant filed a motion for summary judgment. Fed. R. Civ. P. 56(a). (Doc. 46.) Plaintiff filed an opposition on October 9, 2012, Defendant filed a reply on October 11, 2012, and the matter was submitted upon the record. Local Rule 230(l). (Docs. 52, 55.)

Plaintiff filed a surreply on October 29, 2012, but he did not seek leave of court to do so and the Court declines to consider it. (Docs. 60-62.) There is no entitlement to file additional briefing and the Court finds it unnecessary.

**II. Summary Judgment Standard**

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); *Washington Mutual Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendant does not bear the burden of proof at trial and in moving for summary judgment, he need only prove an absence of evidence to support Plaintiff's case. *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)). If Defendant meets his initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp.*, 627 F.3d at 387 (citing *Celotex Corp.*, 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

However, in judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 1566 (quotation marks and citation omitted). The Court determines *only* whether there is a genuine issue for trial and in doing so, it

must liberally construe Plaintiff's filings because he is a prisoner proceeding pro se. *Thomas v. Ponder*, 611 F3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

**III. Discussion**

**A. Plaintiff's Rule 56(d) Motion**

As an initial matter, Plaintiff requests further discovery in his opposition, contending that he has not had sufficient opportunity to obtain discovery and he was denied discovery by Defendant on or around March 18, 2012.

Federal Rule of Civil Procedure 56(d) provides, "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."

Pursuant to the scheduling order filed on November 23, 2011, the deadline for the completion of all discovery was July 23, 2012, and Plaintiff at no time sought to modify the scheduling order.[1] Fed. R. Civ. P. 16(b). Based on Plaintiff's exhibits, he served Defendant with two separate requests for the production of documents on March 19, 2012, and pursuant to the scheduling order, Defendant's responses were to be served on or before May 7, 2012. (Opp., Ex. B.) If Plaintiff was dissatisfied with Defendant's responses, or if Defendant failed to respond, Plaintiff's recourse was to file a motion to compel on or before July 23, 2012, which he failed to do. At this stage in the proceedings, discovery has been closed for more than nine months and Plaintiff may not seek further discovery or request a continuance of Defendant's motion for summary judgment based on a purported need for further discovery. Accordingly, Plaintiff's Rule 56(d) motion is denied.

///

///

///

---

[1] Defendant filed a timely motion to compel on June 25, 2012, and in an order filed on September 27, 2012, the Court denied the motion as moot and granted Defendant thirty days within which to file a renewed motion to compel, which he did on October 25, 2012. Therefore, the deadline to complete discovery was July 23, 2012, with the limited exception of Defendant's renewed motion to compel filed on October 25, 2012, which shall be addressed in a separate order.

**B. Statements of Fact**

**1. Defendant's Factual Statement**

Defendant Sanders is a correctional sergeant employed by the California Department of Corrections and Rehabilitation ("CDCR"); he has worked for the CDCR for approximately seven years. Defendant is assigned to Facility 4-A of the Security Housing Unit ("SHU") at Corcoran. As a correctional sergeant, Defendant's responsibilities are to supervise correctional officers and inmates, train staff, ensure the safety and security of inmates and staff, and address inmate misconduct and disciplinary issues.

On November 18, 2009, Defendant was assigned as a sergeant in Facility 4B, and he participated in the processing of inmates arriving to the SHU from other CDCR institutions via bus.

There are thirty-three adult institutions within the CDCR, and only Corcoran, California Correctional Institution, and Pelican Bay State Prison have SHUs. The SHU is reserved for inmates whose conduct endangers the safety of others or the security of the institution. In most cases, these inmates have committed serious rules violations while housed in a general population setting. Additionally, the SHU houses validated prison gang members.

Inmates committed to a term in the SHU at Corcoran arrive via transport bus to a secured area outside of the SHU facilities. The inmates arrive in waist chains, and when they exit the bus, sergeants immediately instruct them to look upwards. The sergeants ask the inmates questions regarding their classification and gang affiliations, among other things. While the sergeants are asking the inmates questions, correctional officers positioned behind the inmates remove their waist chains, and replace them with handcuffs. After the inmates are placed in handcuffs, search and escort officers transport the inmates to the visiting building, which is located inside a secured area in between where the buses arrive and the actual SHU facilities.

Once they arrive at the visiting building, the inmates are placed in holding cells and are processed. The inmates are stripped of their clothing, and they undergo a comprehensive body and cavity search to ascertain whether they are in possession of any weapons or contraband. Following the body and cavity search, the inmates are issued boxer shorts and shoes, and they are placed in

///

plastic "zip" hand restraints instead of handcuffs. The inmates are escorted through a metal detector two times, from two different positions, and are returned to holding cells.

Finally, the inmates are examined by medical staff who perform a medical screening to determine if the inmates are medically cleared to place in SHU housing. Once the inmates are medically cleared, search and escort officers escort the inmates to their assigned housing units.

Sergeants supervise the processing and escort of inmates, but do not personally escort inmates. Defendant's responsibilities during this process were to supervise the correctional officers in the performance of their duties. He typically was stationed at the podium located inside of the visiting building, near the metal detector; and he was not responsible for taking custody of the inmates when they were removed from the bus and he did not participate in any of the processing that occurred outside of the visiting building. Moreover, Defendant did not escort the inmates from the bus to the visiting building, nor did he escort the inmates from the visiting building to their housing units after they had been processed. Escorting inmates is the responsibility of search and escort officers, not supervisors.

On February 25, 2009, Plaintiff was placed in the Administrative Segregation Unit at the California State Prison-Sacramento (referred to as New Folsom State Prison by Plaintiff) for committing battery with a weapon on another inmate. Because of the charge, prison administrators recommended that Plaintiff be transferred to the SHU at Corcoran with a minimum earliest release date of August 25, 2010. Plaintiff arrived at Corcoran on November 18, 2009.

Defendant did not make contact with Plaintiff outside of the visiting building on November 18, 2009, nor did he escort Plaintiff from the visiting building to Plaintiff's housing unit. To the best of Defendant's recollection, he did not speak to Plaintiff at all on November 18, 2009.

On or about December 5, 2009, Defendant received notice that Plaintiff had submitted a staff complaint against him. Because Defendant did not know who Plaintiff was, he approached Plaintiff's cell to inquire as to the purpose of the staff complaint.

When Defendant arrived at Plaintiff's cell, Plaintiff was sitting on the floor looking at various papers. Defendant knocked on the door and Plaintiff asked, "Who the fuck are you?" Defendant asked Plaintiff if Plaintiff filed a staff complaint against him, and Plaintiff appeared confused and

again asked who he was. Defendant identified himself to Plaintiff, and Plaintiff responded, "You don't remember slamming my face to the fence, you tough mother fucker." Defendant informed Plaintiff that Plaintiff had mistaken him for somebody else, to which Plaintiff responded, "It's on you to figure out who the fuck it was." Defendant then walked away from Plaintiff's cell and has not seen or spoken to him since.

Defendant did not use any force against Plaintiff during his processing outside of the visiting building on November 18, 2009; and Defendant did not assist in processing any inmates outside of the visiting building or escort any inmates to visiting or to housing units after they were processed.

Defendant's only contact with Plaintiff occurred on or about December 5, 2009, when Defendant asked Plaintiff why he had submitted a staff complaint against him.

Further, there were no incidents between inmates and staff during processing of the bus that arrived at the Corcoran SHU on November 18, 2009, and Sergeants Medina and Leone did not witness Defendant use any force against Plaintiff. Had there been an incident involving Plaintiff and Defendant, they would have seen it, as the processing area is not large and it is highly secured.

**2. Plaintiff's Factual Statement**[2]

Plaintiff arrived at Corcoran from New Folsom State Prison (California State Prison-Sacramento) on November 18, 2009. (Doc. 12, Amend. Comp., ¶8.) Plaintiff's name was called to exit the bus and Defendant Sanders ordered him to look up at the sky while Sergeant Medina removed Plaintiff's handcuffs and waist chains. (*Id.*, ¶9.) Defendant then re-cuffed Plaintiff with his hands behind his back. (*Id.*, ¶10.) Defendant asked Plaintiff why he was at Corcoran's SHU and Plaintiff said he did not know. Defendant then said anyone who wears his hair like that must be stupid, referring to Plaintiff's shoulder length dreadlocks. (*Id.*, ¶¶11-13.)

Plaintiff turned his head to see Defendant's name tag and Defendant forced him into a metal fence, face first, telling him, "Do not fucken [sic] look at me." (*Id.*, ¶14.) Plaintiff sustained injuries to his right shoulder and damage to his prescription eye glasses. (*Id.*) Defendant then forcefully

///

[2] Plaintiff's amended complaint is verified and therefore, it is treated as an opposing affidavit. *Jones v. Blanas*, 393 F.3d 918, 922-23 (9th Cir. 2004). (Doc. 12, Amend. Comp., p. 24.)

marched Plaintiff to the Facility 4-B visiting area and smashed his face into a concrete wall at the back of a cell, injuring Plaintiff's right eye area. (*Id.*, ¶15.)

Approximately three hours later, Plaintiff's injuries were noticed during the routine new arrival medical examination and were documented by L. Vasquez, a nurse. (Amend. Comp., ¶16; Opp. Ex. A.)

**C. Legal Standard for Excessive Force Claims**

The Cruel and Unusual Punishments Clause of the Eighth Amendment protects prisoners from the use of excessive physical force. *Wilkins v. Gaddy*, 559 U.S. 34, ___, 130 S.Ct. 1175, 1178 (2010) (per curiam); *Hudson v. McMillian*, 503 U.S. 1, 8-9, 112 S.Ct. 995 (1992). What is necessary to show sufficient harm under the Eighth Amendment depends upon the claim at issue, with the objective component being contextual and responsive to contemporary standards of decency. *Hudson*, 503 U.S. at 8 (quotation marks and citations omitted). For excessive force claims, the core judicial inquiry is whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Wilkins*, 559 U.S. at ___, 130 S.Ct. at 1178 (citing *Hudson*, 503 U.S. at 7) (quotation marks omitted).

Not every malevolent touch by a prison guard gives rise to a federal cause of action. *Wilkins*, 559 U.S. at ___, 130 S.Ct. at 1178 (citing *Hudson*, 503 U.S. at 9) (quotation marks omitted). Necessarily excluded from constitutional recognition is the *de minimis* use of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. *Wilkins*, 559 U.S. at ___, 130 S.Ct. at 1178 (citing *Hudson*, 503 U.S. at 9-10) (quotations marks omitted). In determining whether the use of force was wanton and unnecessary, courts may evaluate the extent of the prisoner's injury, the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7 (quotation marks and citations omitted).

While the absence of a serious injury is relevant to the Eighth Amendment inquiry, it does not end it. *Hudson*, 503 U.S. at 7. The malicious and sadistic use of force to cause harm always violates contemporary standards of decency. *Wilkins*, 559 U.S. at ___, 130 S.Ct. at 1178 (citing

*Hudson*, 503 U.S. at 9) (quotation marks omitted). Thus, it is the use of force rather than the resulting injury which ultimately counts. *Id.* at 1178.

**D. <u>Findings</u>**

Defendant argues that he is entitled to summary judgment because he did not use any force on Plaintiff and he did not violate Plaintiff's rights. Defendant contends that he was stationed inside the building and he did not work outside the SHU facility processing inmates upon their exit from the bus. Defendant further contends that Plaintiff did not know who he was on December 5, 2009, when he went to Plaintiff's cell to discuss the staff complaint Plaintiff filed, and that Plaintiff told him it was "on him" to figure out who slammed Plaintiff's face into the fence, evidencing the lack of connection between Defendant and the violation of Plaintiff's rights. In addition, Defendant submits the declarations of two sergeants who were present on the scene and who attest that there were no incidents between staff and inmates during the processing of inmate received by bus on November 18, 2009, and that they did not see Defendant use any force on Plaintiff.

In opposition, Plaintiff attests that Defendant Sanders slammed him into a fence and then smashed his face into a concrete wall on November 18, 2009, and he submits a "Medical Report of Injury or Unusual Occurrence," dated November 18, 2009, in which injuries to Plaintiff's shoulder and face were noted and Plaintiff's statement that his face was smashed into a concrete wall by a sergeant was documented.[3] (Opp. Ex. A.)

Not surprisingly, the parties offer contradictory versions of events, and each party has supported his version with factual statements made under penalty of perjury. Although Defendant supports his position with additional declarations by Sergeants Medina and Leon, it is impermissible for the Court to assess the credibility of the witnesses or weigh the evidence. *Soremekun*, 509 F.3d at 984; *T.W. Elec. Serv., Inc. v Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir.

---

[3] Plaintiff's opposition is not verified and therefore, the arguments made therein have no evidentiary value. However, Plaintiff's amended complaint is verified. Although Defendant argues in his reply that Plaintiff may not rely upon his allegations at this stage, that is an incorrect statement as it pertains to verified pleadings filed by pro se litigants. In evaluating Plaintiff's opposition to Defendant's motion for summary judgment, the Court is required to consider the contentions in Plaintiff's amended complaint where those contentions are made under penalty of perjury and are based on personal knowledge of facts which are admissible in evidence. *Jones*, 393 F.3d at 923.

1987). Thus, in a battle of dueling declarations, the winner may not be declared based upon the number of declarations submitted or the contents therein, so long as the declarations in question are based on personal knowledge of facts admissible in evidence.

Furthermore, Plaintiff's evidence need not be "compelling," as Defendant asserts in his reply, and Defendant's citation to *Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1769 (2007) for the proposition that Plaintiff's version of events is so blatantly contradicted by the record that it need not be adopted is unpersuasive. There is no videotape in evidence from November 18, 2009, showing that Plaintiff was offloaded from the bus and placed in his cell without incident and/or showing that Defendant was not at the scene, and thus, unlike in *Scott*, there is no evidence which so discredits Plaintiff's version of events that no reasonable jury could adopt his version of the facts. *Scott*, 550 U.S. at 378-80.

In sum, there exist factual disputes between the parties regarding what occurred on November 18, 2009 and those disputes are material. As a result, the trier of fact must determine what did or did not happen between the parties on the date in question.

Additionally, assuming the truth of Plaintiff's version as it must, the Court cannot find that the force used was reasonable as a matter of law, and it declines to find that slamming an inmate's face into a fence and then into a concrete wall constitutes a *de minimis* use of force. *Wilkins*, 559 U.S. at ___, 130 S.Ct. at 1178-79. The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, *Wilkins*, 559 U.S. at ___, 130 S.Ct. at 1178 (citation omitted), and given Plaintiff's version of events, there was no need for *any* application of force, s*ee P. B. v. Koch*, 96 F.3d 1298, 1303 n.4 (9th Cir. 1996) (if there is no need for force, the use of force is objectively unreasonable). Therefore, the Court recommends that Defendant's motion for summary judgment on Plaintiff's Eighth Amendment excessive force claim be denied.

**E. <u>Entitlement to Qualified Immunity</u>**

**1. <u>Two-Part Inquiry</u>**

Defendant also argues that he is entitled to qualified immunity, which is "immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009) (citation

and internal quotations omitted). Qualified immunity shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808 (2009), and it protects "all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986).

In resolving the claim of qualified immunity, the Court must determine whether, taken in the light most favorable to Plaintiff, Defendant's conduct violated a constitutional right, and if so, whether the right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001); *Mueller*, 576 F.3d at 993. While often beneficial to address in that order, the Court has discretion to address the two-step inquiry in the order it deems most suitable under the circumstances. *Pearson,* 555 U.S. at 236 (overruling holding in *Saucier* that the two-step inquiry must be conducted in that order, and the second step is reached only if the court first finds a constitutional violation); *Mueller*, 576 F.3d at 993-94.

In this instance, for the reasons previously articulated, the evidence viewed in the light most favorable to Plaintiff demonstrates a constitutional violation and there exist triable issues of fact as to whether that right was violated. Therefore, the Court proceeds without further discussion to the second step of the inquiry.

**2. <u>Clearly Established Right</u>**

"For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508 (2002). While the reasonableness inquiry may not be undertaken as a broad, general proposition, neither is official action entitled to protection "unless the very action in question has previously been held unlawful." *Hope*, 536 U.S. at 739. "Specificity only requires that the unlawfulness be apparent under preexisting law," *Clement v. Gomez*, 298 F.3d 898, 906 (9th

///

Cir. 2002) (citation omitted), and prison personnel "can still be on notice that their conduct violates established law even in novel factual circumstances," *Hope*, 536 U.S. at 741.

By 2009, it had long been clear that "the Eighth Amendment's prohibition of cruel and unusual punishments draws its meaning from the evolving standards of decency that mark the progress of a maturing society," and "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson*, 503 U.S. at 8-9. The evidence must be viewed in the light most favorable to Plaintiff, *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003), and as previously articulated, Plaintiff's position is that Defendant slammed him face first into a fence and then into a concrete wall, causing injuries. Under Plaintiff's versions of events, these actions were unprovoked and did not occur in the course of attempting to maintain or restore order.

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions," *Ashcroft v. al-Kidd*, __ U.S. __, __, 131 S.Ct. 2074, 2085 (2011), but here, the law was sufficiently clear that a reasonable officer would have known he could not slam an inmate into a fence and a wall, in the absence of any need to maintain or restore discipline and for the very purpose of causing harm to the inmate. *Wilkins*, 559 U.S. at ___, 130 S.Ct. at 1178; *Hudson*, 503 U.S. at 6-7; *Martinez*, 323 F.3d at 1183-84. Given that Defendant denies any use of force at all and there is no evidence of any incident requiring the need to maintain or restore order, this case does not involve a reasonable but mistaken judgment and Defendant is not entitled to qualified immunity.

**F. <u>Claim for Declaratory Relief</u>**

Finally, Defendant argues that Plaintiff is not entitled to the declaratory relief he seeks in his amended complaint. Plaintiff did not respond to the argument.

Plaintiff's claim for damages necessarily entails a determination whether his rights were violated and therefore, his separate request for declaratory relief is subsumed by that claim. *Rhodes v. Robinson*, 408 F.3d 559, 565-66 n.8 (9th Cir. 2005) (quotation marks omitted). Accordingly, the Court recommends that Plaintiff's claim for declaratory relief be dismissed from the action, with prejudice, for failure to state a claim. 28 U.S.C. 1915A; Fed. R. Civ. P. 12(b)(6).

## IV. Conclusion and Recommendations

Based on the foregoing, the Court HEREBY RECOMMENDS as follows:

1. Plaintiff's Rule 56(d) motion, raised in his opposition filed on October 9, 2012, be denied;
2. Defendant's motion for summary judgment on Plaintiff's Eighth Amendment excessive force claim, filed on September 20, 2012, be denied; and
3. Plaintiff's declaratory relief claim be dismissed, with prejudice, for failure to state a claim.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated: June 13, 2013** **/s/ Sheila K. Oberto**
UNITED STATES MAGISTRATE JUDGE